IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **FIRAS ABU ZUHRIEH**, <br><br> Defendant. | No. 14-CR-3604-MV |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Firas Abu Zuhrieh's Motion for New Trial [Doc. 105] and Brief-in-Chief in Support of his *Motion for New Trial* (Doc. 105) [Doc. 136]. The government timely responded [Doc. 139] and Defendant replied [Doc. 143]. The Court, having considered the Motion, briefs, relevant law, and being otherwise fully-informed, finds that the Motion is not well-taken and therefore will be **DENIED.**

BACKGROUND

On August 27, 2015, at the conclusion of a four-day trial, a jury found Defendant Abu Zuhrieh guilty of all six Counts charged against him in the Superseding Indictment. *See generally* Doc. 98. On September 10, 2015, Defendant timely filed a Motion for New Trial [Doc. 105], which he then supplemented in his Brief-in-Chief [Doc. 136]. *See* Doc. 129 at 1 (granting Defendant's requested

1

extension to supplement Motion for New Trial). In this Motion and its supporting Brief, Defendant argues that he is entitled to a new trial for three independent reasons: (1) the government suppressed "possible exculpatory evidence," Doc. 105 ¶ 7, (2) the jury was influenced by "prejudice against Mr. Abu Zuhrieh based on his national origins [sic]," *id.* ¶ 15, and (3) the Court inaccurately instructed the jury regarding the applicable law. Doc. 136 at 1. The Court finds each of these arguments to be without merit.

## DISCUSSION

### I. Rule 33 and a Motions for New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). While this standard imbues the trial court with significant discretion, it is well-established that a "motion for a new trial is not regarded with favor and should only be granted with great caution." *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). *See also United States v. Daniels*, 188 F. Supp. 2d 1309, 1311 (D. Kan. 2002) ("The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court."). Such a motion may be grounded on any reason, "including improper jury instructions." *United States v. Mann*, 982 F. Supp. 2d 1251, 1259 (D.N.M. 2013). The Court will address each of Defendant's proffered bases for a new trial and will reject each in turn.

## II. Prosecutorial Misconduct

Defendant argues that the government violated its *Brady* obligation by "inserting language regarding [Defendant's] mental state into" his co-Defendant's plea agreement in an effort "to prevent the possibility of favorable testimony on Mr. Abu Zuhrieh's behalf at the trial." Doc. 105 ¶ 8. That is, Defendant avers that the "government included language in the plea agreement of the co-defendant in this case, Islam Kandil, asserting that Mr. Kandil knew that Mr. Abu Zuhrieh was aware that the arcane substances at issue in this cause were federally controlled substances" and rejected Kandil's request to remove such language from the agreement. *Id.* ¶ 6. Defendant argues that "Mr. Abu Zuhrieh's knowledge, or lack thereof, regarding the status of the substances at issue in Mr. Abu Zuhrieh's trial was wholly irrelevant to the facts on which Mr. Kandil's plea was based," such that it can be inferred that this language was included "to prevent any possibility that Mr. Kandil might testify on Mr. Abu Zuhrieh's behalf during Mr. Abu Zuhrieh's trial." *Id.* This, Defendant argues, is tantamount to suppression of exculpatory evidence, in violation of the government's obligation under *Brady v. Maryland* and its progeny.

A defendant seeking a new trial based on an alleged *Brady v. Maryland* violation has the burden to "prove by a preponderance of the evidence: (1) the government suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material." *United States v. Reese*, 745 F.3d 1075, 1083

3

(10th Cir. 2014).  "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). Here, Defendant cannot satisfy even the first of these three elements.  Indeed, other than Defendant's "information and belief," there is no basis to believe *either* that Kandil's attorney requested that the contested language be removed from the plea agreement *or* that the prosecutors "insisted upon" its inclusion.  *See* Doc. 105 ¶ 6. Moreover, even if this language were included for the sole purpose of limiting Kandil's possible testimony at trial, Defendant has provided no authority to suggest that this practice qualifies as "suppression" for *Brady* purposes, much less that Kandil's testimony would have been favorable to Abu Zuhrieh.  To the contrary, the facts to which Kandil stipulated in the plea are emphatically inculpatory; Defendant's argument would require the Court to infer, without any evidence, that Kandil perjured himself at Abu Zuhrieh's expense.  This suggestion is absurd on its face.  Consequently, the Court will decline to grant Defendant a new trial on this basis.

### III.   Jury Bias

Defendant next contends that the jury verdict is undermined by bias animated by Defendant's "national origi[n]."  Doc. 105 ¶ 15. Although Defendant concedes that his "origins and language were addressed by the undersigned counsel" during *voir dire*, and that "[n]one of the members of the [jury] panel expressed any

4

note of prejudice against Mr. Abu Zuhrieh as a result of his nationality, his origins or his language," Defendant nonetheless argues that impermissible bias may be inferred from the conduct of the jury. *Id.* ¶ 12. In Defendant's view, the fact that the jurors collectively asked the Court, in writing, whether their names would remain confidential and whether the Court could provide them an armed escort from the building, indicates that they were prejudiced against the Jordanian-Israeli Defendant. *Id.* ¶ 9. That is, Defendant appears to view the jury's questions as part of the "fever pitch" of "prejudice against Arabic people and Muslim people" in the United States that "has only increased since the 2008 elections, and increased further given global political developments in recent months and the upcoming presidential elections." *Id.* ¶ 13.

  Defendant's theory cannot bear its heavy burden. "A new trial based on juror misconduct is appropriate only where there is either a showing of actual bias or circumstances 'compel an imputation of inherent bias to the juror as a matter of law.'" *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir. 1992) (quoting *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986)). No such "imputation" is compelled here. Indeed, Defendant's "showing" of bias is, at best, speculative. As Defendant readily concedes, his attorney raised the issue of potential prejudice during *voir dire* and "[n]one of the members of the panel expressed any note of prejudice against" Defendant. Doc. 105 ¶ 12. *See also United States v. Brooks*, 569 F.3d 1284, 1288 (10th Cir. 2009) ("Actual bias is shown by the express admission of

5

the juror of a state of mind prejudicial to a party's interest.") (internal quotation marks omitted).  Such "thin allegations of jury misconduct" are insufficient to justify a new trial or even demand an evidentiary hearing.  *Id.* at 1288 (internal quotation marks omitted).  That is, Defendant's sole reason for believing that the jury harbored a bias against him is the fact that they appeared to exhibit fear of reprisal in their questions to the Court.  While the jury's questions were, in the Court's experience, irregular and unorthodox, there is no reason to suspect that they were the product of prejudice, rather than, for example, over-active imaginations, overabundant caution, or any other permissible motive.  Given the absence of any evidence that would lead this Court to conclude that bias infected the jury's deliberations, the Court will not order a new trial.

## IV. Jury Instructions

### a. *Standard of Review*

Defendant's final basis for requesting a new trial is a set of purported deficiencies in the Jury Instructions that the Court issued at trial.  "In reviewing challenges to jury instructions, the Court must look at the jury instructions as a whole and determine if the jury likely was misled."  *United States v. Powell*, 165 F. Supp. 2d 1230, 1238 (D. Kan. 2001) (citing *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994)).  *See also Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1274 (10th Cir. 2006) ("When the adequacy of a jury instruction is challenged, we consider all the jury heard, and from the standpoint of the jury, decide not

whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues.") (internal quotation marks omitted). Consistent with this standard of review, a "new trial is not appropriate where the instructions as a whole properly state the law and provide the jury an 'intelligent, meaningful understanding of the applicable issues and standards.'" *Powell*, 165 F. Supp. 2d at 1238 (quoting *United States v. Winchell*, 129 F.3d 1093, 1096 (10th Cir.1997)). *See also United States v. Pickard*, 278 F. Supp. 2d 1217, 1241-42 (D. Kan. 2003) ("In reviewing jury instructions, the court must determine if the instructions properly state the law and provide the jury with ample understanding of the issues and the standards applicable."). Accordingly, the "Court will grant a new trial only if it has 'substantial doubt that the jury was fairly guided.'" *Powell*, 165 F. Supp. 2d 1238-39 (quoting *Smith*, 13 F.3d at 1424)).

Here, however, because Defendant did not object at trial to any of the Jury Instructions that he now, for the first time, argues were deficient, the Court reviews its Jury Instructions only for plain error. *See United States v. Mann*, 982 F. Supp. 2d 1251, 1255 (D.N.M. 2013) ("a defendant who fails to preserve an error is entitled to relief if he can establish plain error."). *See also, e.g.*, *Hester v. Wal-Mart Stores, Inc.*, 405 F. Supp. 2d 1268, 1273-74 (D. Kan. 2005) (explaining that because "plaintiff never objected to the court's failure to include that instruction in the final instructions," the argument had been waived and, therefore, the "court's failure to

7

give an adverse inference instruction, then, is examined only for plain error constituting a miscarriage of justice"); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1094 (10th Cir. 2007) ("when a party does not object to an instruction before the district court (the case here with respect to several instructions), we can review the district court's decision to administer the instruction only for plain error."). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Teague*, 443 F.3d 1310, 1318-19 (10th Cir. 2006) (internal quotation marks omitted). The Court perceives no error in its Jury Instructions, much less a plain one.

    b.  *The Instant Case*

Defendant objects to two sets of jury instructions: Jury Instruction Fourteen and Jury Instructions Fifteen and Sixteen. Defendant's arguments in favor of his position are disjointed, unsubstantiated, and predicated on gross mischaracterizations of both the United States Supreme Court's decision in *McFadden v. United States* and the Jury Instructions issued by the Court. *See McFadden v. United States*, 135 S. Ct. 2298 (2015). Consequently, in view of the plain error standard applicable to the Court's review, rather than walk through each contention that Defendant puts forward, the Court will instead explain the current status of the law after *McFadden*, apply it to the Jury Instructions in this case, and then discuss why Defendant's primary arguments are unavailing.

i. The Controlled Substances Act After *McFadden*

In *McFadden v. United States*, the United States Supreme Court "gave the Analogue Act a narrow construction that may go some way to alleviating potential concerns about the vagueness of its terms." *United States v. Makkar*, 810 F.3d 1139, 1142 (10th Cir. 2015). In so doing, the Court held that the Controlled Substances Act "requires the Government to establish [in a criminal prosecution] that the defendant knew he was dealing with 'a controlled substance.'" *McFadden*, 135 S. Ct. at 2302. The Supreme Court explained that this "knowledge requirement may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was" or "by showing that the defendant knew the identity of the substance he possessed." *Id.* at 2304. *See also United States v. Ramos*, -- F.3d --, 2016 WL 497167, at *5 (8th Cir. 2016) ("The Court explained that the Government either must (1) show the defendant knew she was dealing with some controlled substance, regardless of whether she knew the identity of the substance, or (2) show that the defendant knew the specific features of the substance that make it a controlled substance analogue."). As discussed below, the Court's Jury Instructions appropriately characterize the knowledge requirement articulated in *McFadden*.

Defendant now challenges Jury Instructions Fourteen, Fifteen, and Sixteen, on the basis that they, "whether read individually or taken as a whole, provided the jury with insufficient guidance as to the required *mens rea* for a CSA prosecution."

Doc. 136 at 11.  For the purposes of this discussion, and in accordance with Defendant's Brief-in-Chief, the Court will address separately Jury Instruction Fourteen and treat Jury Instructions Fifteen and Sixteen as a unit.  *See id*. at 11-12.  None of the challenged Jury Instructions inaccurately states the law.

        ii.  <u>Jury Instruction Fourteen</u>

In Jury Instruction Fourteen, the Court explained that "Defendant is charged in Count 1 with a violation of 21 U.S. C. § 846" which "makes it a crime for anyone to conspire with someone else to violate federal laws pertaining to controlled substances."  Doc. 99 at 17.  Jury Instruction Fourteen specified that "the Defendant is charged with conspiracy to distribute a Schedule I controlled substance, XLR-11."  *Id.*  Defendant notes that the "instruction provides a citation, stating that the charge is for a violation of 21 U.S.C. § 846, but does not name, let alone provide any description, of the specific federal statute in issue" and that "the instruction does not define 'Schedule I' or 'controlled substance,' nor does it describe the scheduling process in any way."  Doc. 136 at 11.  That is, in Defendant's view, the Court's Jury Instruction "did not identify the statute Mr. Abu Zuhrieh was accused of violating, or distinguish it from any other federal or state law, as mandated by *McFadden*."  Doc. 143 at 3.

The Court disagrees.  First, the Court joins the United States in noting that the instruction to which Defendant now objects is drawn directly from the Pattern Instructions provided by the United States Court of Appeals for the Tenth Circuit.

*See* Doc. 139 at 7.  *See also* Doc. 143 at 3-4.  Second, it is demonstrably false that Jury Instruction Fourteen "did not identify the statute Mr. Abu Zuhrieh was accused of violating." Doc. 143 at 3.  To the contrary, Jury Instruction Fourteen expressly states that "Defendant is charged in Count 1 with a violation of 21 U.S.C. § 846," which "makes it a crime for anyone to conspire with someone else to violate federal laws pertaining to controlled substances." Doc. 99 at 17.  This is sufficient.  Nothing in the Court's reading of *McFadden* would require that the Court subject jurors to a pedantic exegesis on the minutiae of the Controlled Substances Act prior to releasing them to deliberate.  Notably, Defendant has cited to no authority whatsoever to support his sweeping contention.  Third and finally, Jury Instruction Fourteen must be read in conjunction with the remainder of the Court's Jury Instructions, which, as will be discussed below, clearly and succinctly describe the relevant law.  *See Powell*, 165 F. Supp. 2d at 1238 ("the Court must look at the jury instructions as a whole and determine if the jury likely was misled").

      iii.  Jury Instructions Fifteen and Sixteen

In Jury Instructions Fifteen and Sixteen the Court explained that to "find the Defendant guilty of this crime you must be convinced that the government has proven each of the following beyond a reasonable doubt: **First**: the Defendant knowingly or intentionally distributed a controlled substance as charged; and **Second:** the substance was in fact [the substance charged]." Doc. 99 at 19

11

(emphasis original).  The Court clarified that the substances described in Jury Instructions Fifteen and Sixteen were both "controlled substance[s] within the meaning of the law."  *Id.*  Moreover, the Court instructed that "[t]o meet its burden of proving the first element, the government must prove that the Defendant knew that the substance that he distributed was a controlled substance" and specified that "[t]he government can meet this burden by proving ***either*** that: (1) the Defendant knew that the substance he distributed was a controlled substance under the Controlled Substances Act, even if he did not know the identity of the controlled substance; ***or*** (2) the Defendant knew that the specific substance [was the substance charged], even if he did not know that [the substance] is listed on the schedules of federally controlled substances."  *Id.* at 19-20 (emphasis original).

These two jury instructions each contain a faithful explanation of the knowledge requirement described in *McFadden*.  Indeed, the Court's Jury Instructions track, virtually verbatim, the language employed by the Supreme Court itself.  *See* Doc. 139 at 8 (noting that the language of the Court's Jury Instructions "mirror[s], almost exactly, the language of McFadden. The jury could not have been instructed more clearly, precisely, or accurately").  That is, Justice Thomas, writing for the Court, explained that the "knowledge requirement may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was," while at trial the Court instructed the jury that the government could meet its burden by showing that "the

12

Defendant knew that the substance he distributed was a controlled substance under the Controlled Substances Act, even if he did not know the identity of the controlled substance." *Compare McFadden*, 135 S. Ct. at 2304 *with* Doc. 99 at 19, 21. Similarly, *McFadden* states that the "knowledge requirement may also be met by showing that the defendant knew the identity of the substance he possessed." *McFadden*, 135 S. Ct. at 2304. The Court used the same verbiage, explaining that "the Defendant knew that the specific substance that he distributed was [that substance], even if he did not know that [the substance is] listed on the schedules of federally controlled substances." Doc. 99 at 19-20, 21-22. It is simply risible to suggest that the Court's Jury Instructions do not accurately state the knowledge requirement articulated in *McFadden*. *See Pickard*, 278 F. Supp. 2d at 1241-42 ("In reviewing jury instructions, the court must determine if the instructions properly state the law and provide the jury with ample understanding of the issues and the standards applicable.").

Stated otherwise, the Court finds that "the instructions as a whole properly state the law and provide the jury an 'intelligent, meaningful understanding of the applicable issues and standards.'" *Powell*, 165 F. Supp. 2d at 1238 (quoting *United States v. Winchell*, 129 F.3d 1093, 1096 (10th Cir.1997)). The minor linguistic variations between referring to "a substance listed on the schedules" and "a controlled substance under the Controlled Substances Act" represent an effort to clarify the meaning and legal significance of the "schedules" to which *McFadden*

13

refers. In the Court's view, the use of the phrase "a controlled substance under the Controlled Substances Act," is substantially clearer and more instructive than the language evidently demanded by Defendant. Indeed, in *McFadden*'s third footnote, frequently invoked by Defendant, the Supreme Court itself explains that "the government must prove that a defendant knew that the substance in question was 'a controlled substance' under federal law," thus tacitly eschewing the rigid, fetishistic adherence to the word "schedules" that Defendant would require. *McFadden*, 135 S. Ct. at 2306 n.3. Jury Instructions Fifteen and Sixteen, taken in aggregate and read in conjunction with the remaining Jury Instructions, appropriately describe the current law; there is no error in these Jury Instructions, much less a plain one.

      iv. <u>Defendant's Arguments Are Unavailing</u>

None of Defendant's arguments is contrary to the Court's holding. For example, Defendant reasons that Jury Instructions Fifteen and Sixteen, "begin by failing to explicitly [sic] link the statute cited for the charged offense to the CSA, explain that the cited statute is a federal law, or explain the emergency listing process" and that "[t]his vagueness is insufficient" given the Supreme Court's rejection of the position that "a defendant can be guilty if he knew that the substance in which he was dealing was regulated 'by any law,' state or federal." Doc. 136 at 11-12. This is nonsense. The Jury Instructions given in this case plainly required the jury to find that "Defendant knew that the substance he

distributed was a controlled substance under the Controlled Substances Act" rather than merely "any law." Doc. 99 at 19, 21.

Similarly, research has revealed no requirement, either in *McFadden* or elsewhere, that the Court explain the "emergency listing process." Doc. 136 at 19. While the mechanics of the process by which drugs are added to the schedules in the Controlled Substances Act may have made for interesting fodder during closing argument, the fact that a substance was listed in a particular fashion simply does not change the knowledge requirement described in *McFadden*. Moreover, as with the majority of his Brief-in-Chief and Reply, Defendant's insistence that the Court was required to instruct the jury in greater detail is entirely devoid of citation to any case law. Indeed, in Defendant's **entire** Brief-in-Chief and Reply, the **only** authority to which Defendant cites for a proposition of substantive law regarding the propriety of the Jury Instructions that the Court issued is *McFadden*, which, of course, gives no explicit guidance regarding jury instructions. *See* Doc. 136 at 4-20; Doc. 143 at 3-5. Absent any binding or persuasive authority for guidance, the Court will not follow Defendant down a path illuminated solely by counsel's imagination.

Next, Defendant insists that the Court "mischaracterize[d] the CSA's knowledge requirement" in its Jury Instructions because "the jury receives no guidance as to what that term [Controlled Substances Act] means, again, whether it is a federal or state law." Doc. 136 at 12. Defendant expands on this argument in his Reply, noting that "Instructions No. 15 and 16 failed to provide guidance as to
15

what the Controlled Substances Act is, or explain whether it is a state or federal law; failed to state the essential element of the charged offense that, in order to convict, the jury needed to conclude that" Defendant "knew that the substances he was dealing were listed on the federal drug schedules." Doc. 143 at 5.

      This argument is without merit. As the Court explained above, the Jury Instructions the Court employed use language that tracks, almost verbatim, the Supreme Court decision in *McFadden*. The mere fact that the Court referred to "a controlled substance under the Controlled Substances Act" rather than "a substance listed on the schedules" is of no moment. As the Court noted above, even *McFadden* itself uses both phrasings. *See McFadden*, 135 S. Ct. at 2306 n.3 ("the Government must prove that a defendant knew that the substance in question was 'a controlled substance' under federal law."). The Eight Circuit has also phrased *McFadden*'s knowledge requirement as "the defendant knew she was dealing with some controlled substance." *Ramos*, -- F.3d --, 2016 WL 497167, at *5. Moreover, notwithstanding Defendant's unsubstantiated suggestion, there is simply no requirement in *McFadden* that the Court explain to a jury that the Controlled Substances Act and the schedules of drugs that it describes are matters of federal law; rather, *McFadden* demands only that the jury find that "the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance." *Id.* at 2304.

Defendant also "respectfully submits that the jury in this case should have received a special instruction" that describes "the federal drug schedules and the CSA," including the process by which substances are added to those schedules.  Doc. 136 at 14-15.  Defendant cites no authority, binding or persuasive, direct or analogous, to support his position that such an instruction was necessary for the Jury Instructions, as a whole, to state the law adequately.  *See* Doc. 136 at 14-15.  Furthermore, this argument fails for the same reason as the previous argument: there is simply nothing in *McFadden*, or any other authority, that requires a trial court to explain to a jury the process by which drugs are scheduled.   Whatever the case, failing to include such an instruction in this case absent a proposal or objection from the Parties certainly does not constitute plain error.

Finally, Defendant insists that "that the Court's inadequate jury instructions did not allow the jury to assess the circumstantial evidence adduced at trial under the appropriate legal standard."  Doc. 136 at 15.  That is, Defendant argues that the "[j]urors this case were faced with a formidable amount of circumstantial evidence to navigate" and that "[w]ithout the detailed jury instructions mandated by *McFadden*, however, they could not have reasonably known what weight to give any of it."  *Id.* at 16.  *See also* Doc. 143 at 7 ("without the detailed jury instructions mandated by *McFadden*, the jury could not have known whether or not the circumstantial evidence presented at his trial established his *mens rea* under the CSA beyond a reasonable doubt.").  Defendant's argument must fail.

17

First, the Court has already held that Jury Instructions Fifteen and Sixteen appropriately described the knowledge requirement imposed by *McFadden*. Second, the Court issued the pattern instruction on direct and circumstantial evidence provided by the United States Court of Appeals for the Tenth Circuit, which explains that the "law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial" and that a jury is "permitted to draw reasonable inferences from the testimony and exhibits, inferences [it] feels are justified in the light of common experience." Doc. 99 at 7. This instruction, coupled with Jury Instructions Fifteen and Sixteen correctly states the law and provides the jury with sufficient guidance.

Third, to the extent that Defendant argues that the specific circumstantial evidence employed in this case, including that Defendant's brother "received probation following a state law enforcement investigation," and that one of Defendant's acquaintances had been warned that "spice" was illegal by the DEA, Defendant is undone by *McFadden* itself. There, the Court wrote in its first footnote that "[c]ircumstantial evidence could include, for example, a defendant's concealment of his activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a 'high' similar to that produced by controlled substances, and knowledge that a particular substance is subject to seizure at customs." *McFadden*, 135 S. Ct. at 2304 n.1. These examples make clear that the variety of circumstantial evidence contemplated by *McFadden* need not be

nearly as precise as Defendant would demand. To the contrary, many of the circumstances listed by the Supreme Court, including "a defendant's concealment of his activities, evasive behavior," and "knowledge that a particular substance is subject to seizure at customs" are consistent with a defendant knowing that a substance is prohibited by *some* law, rather than the Controlled Substances Act. Thus, viewed in aggregate, the Court perceives no error in its Jury Instructions.

## CONCLUSION

For the foregoing reasons, the Court holds that there is no basis for a new trial in this case; there is simply no evidence of prosecutorial misconduct or juror bias and the Court's Jury Instructions accurately and appropriately described the relevant law.

**IT IS THEREFORE ORDERED** Defendant Firas Abu Zuhrieh's Motion for New Trial [Doc. 105] is **DENIED.**

Dated this 14th day of March, 2016.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE